**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7       **IN THE UNITED STATES DISTRICT COURT FOR THE**

8                 **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11

12   **KOREY HOLLINQUEST,**                          No.      **C 12-1347 JSW**

13              **Petitioner,**

14              **v.**                               **ORDER DENYING PETITION FOR WRIT
                                                      OF HABEAS CORPUS**

15   **G. D. LEWIS, Warden,**

16              **Respondent.**

17    _____/

18

19          Petitioner Korey Hollinquest ("Petitioner"), a California state prisoner proceeding pro se,

20   seeks a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons set forth below, the petition

21   is DENIED.

22                                   **BACKGROUND**

23          On July 18, 2008, a jury convicted Petitioner of first degree murder with a special

24   circumstance and robbery.  He was sentenced to life in prison without the possibility of parole.  The

25   events leading to Petitioner's conviction are outlined below.

26          On August 22, 2005, at around 1:00 p.m., Petitioner killed Jacque Smith at the intersection of

27   12th Street and Maine Avenue in Richmond.  Tory Buchanan, Smith's intimate partner, set Smith up

28   to be robbed by Petitioner and initially portrayed himself as a second victim of the robbery, but later

United States District Court
For the Northern District of California

1  admitted that he had orchestrated the robbery.  Smith attempted to run away during the robbery, but

2  Petitioner shot him eight times and then ran over him with Smith's Cadillac.

3       The primary testimony that implicated Petitioner in the murder of Smith came from

4  Buchanan.  Buchanan testified at Petitioner's preliminary hearing after receiving use immunity from

5  the prosecution.  He denied having a relationship with Petitioner.  According to Smith's friend, Shira

6  Dennis, however, Buchanan had shared an apartment with Smith and they acted as "boyfriends."

7  Not long before the murder, their relationship soured.

8       Buchanan testified that two days before the murder, Petitioner approached him with a plan to

9  rob Smith.  Buchanan agreed.

10      On the morning of the murder, Smith drove his Cadillac to pick up Buchanan.  After they

11  stopped for food, Buchanan took the wheel of the car and ultimately drove to Richmond and parked

12  at 12th Street and Florida, as agreed with petitioner.  Petitioner approached the car with a gun and

13  told Buchanan to drive to 13th Street and Maine.  Buchanan complied and parked the car near his

14  friend Brenda's house.  Petitioner then struck Smith several times.  Buchanan told Smith to call his

15  mother to arrange for her to give him some money so petitioner would not harm him.  Smith called

16  his mother, then jumped out of the car and started to run away.  Petitioner chased him.

17      Buchanan left the car and went to Brenda's house.  From her house, he heard five or six

18  gunshots.  Brenda went outside and returned to say that "somebody got killed."  Buchanan went

19  outside and saw Petitioner walking back toward the car.  He threw him the keys to the Cadillac and

20  went back to Brenda's house.

21      Smith's body was found on the corner of 13th Street and Maine.  A lot of blood was found

22  nearby and a tire track was detected across his body.  Numerous witnesses who were near the scene

23  of the murder partially heard or observed the incident, but none of them identified any of the

24  principals.

25      Buchanan testified that he did not want Smith killed, but admitted that he willingly

26  participated in the robbery.  On the day of the murder, he made numerous cell phone contacts with

27  Buchanan.

28

**2**

United States District Court
For the Northern District of California

1   Buchanan was not charged with any crimes related to Smith's murder before the preliminary

2   hearing.  After the hearing but before trial, he was charged with felony murder.

3   Don Heidary was a close friend of Petitioner's.  In the days after the murder, Heidary learned

4   that the police were looking for Petitioner in connection with the crime.  Petitioner claimed that he

5   "had  nothing to hide," so Heidary facilitated his surrender to the police.  During Petitioner's

6   incarceration, Heidary spoke with Petitioner numerous times on the phone.  In the course of these

7   recorded conversations, Petitioner never disclosed any relationship with Buchanan, nor did he offer

8   any explanation for his cell phone contacts with Buchanan on the day of the murder.

9   On March 27, 2009, Petitioner was sentenced to life in prison without parole.  The California

10   Court of Appeal affirmed his conviction on December 20, 2010.  *People v. Hollinquest*, 190 Cal.

11   App. 4th 1534 (2011).

12   Petitioner filed a state habeas petition on January 26, 2011.  This petition was denied on

13   March 30, 2011.

14   Petitioner filed a federal habeas petition on March 16, 2012.  Respondent filed an answer on

15   October 9, 2012.  Petitioner filed a traverse on February 13, 2013.

16   **LEGAL STANDARD**

17   This court may entertain a petition for a writ of habeas corpus "in behalf of a person in

18   custody pursuant to the judgment of a State court only on the ground that he is in custody in

19   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v.*

20   *Hodges*, 423 U.S. 19, 21 (1975).

21   A district court may not grant a petition challenging a state conviction or sentence on the

22   basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of

23   the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application

24   of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

25   resulted in a decision that was based on an unreasonable determination of the facts in light of the

26   evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529

27   U.S. 362, 412–13 (2000).  If the state court did not reach the merits of a claim, federal review of the

28

**3**

1 claim is de novo. *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003).

2 A federal court must presume the correctness of the state court's factual findings. 28 U.S.C.

3 § 2254(e)(1). The state court decision implicated by 2254(d) is the "last reasoned decision" of the

4 state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d

5 1085, 1091–92 (9th Cir. 2005).

6 Habeas relief is warranted only if the constitutional error at issue had a "'substantial and

7 injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782,

8 796 (2001).

9 **ANALYSIS**

10 **A.    Claim One**

11 Petitioner alleges that the prosecutor committed error under *Doyle v. Ohio*, 426 U.S. 610

12 (1977), when he argued that Petitioner must be guilty because in the course of his telephone

13 conversations with his friend, Don Heidary, he did not offer an innocent explanation for his cell

14 phone contacts with Buchanan or an account of his whereabouts on the day of Smith's murder.

15 Under *Doyle*, the use of a defendant's post-arrest silence following *Miranda* warnings to impeach

16 the defendant's trial testimony violates due process. *Id*. at 617-18. Here, the prosecutor presented

17 evidence of Petitioner's silence by introducing testimony from investigator Daryl Jackson, who

18 interviewed Heidary. Petitioner further alleges that his trial counsel was incompetent for failing to

19 object to the introduction of this evidence.

20 The state court rejected Petitioner's claim on direct appeal. The court found that the

21 prosecutor committed misconduct under *Doyle* by arguing that Petitioner's silence exhibited

22 consciousness of guilt, but concluded that the impact of this error was not prejudicial under

23 *Chapman v. California*, 386 U.S. 18 (1967). *Hollinquest*, 190 Cal. App. 4th at 1558-60. The court

24 noted that since Petitioner was not silent in the face of an explicit accusation or otherwise placed in a

25 position where his silence manifested an implied admission of guilt, not much probative value could

26 be attached to it. *Id*. at 1559. Additionally, the jury instructions did not exacerbate the *Doyle* error

27 and evidence of Petitioner's guilt was formidable. In light of the totality of the evidence presented,

28 

**4**

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  the court concluded beyond a reasonable doubt that the prosecutor's improper argument did not

2  influence the jury's verdict. *Id*. at 1560.  The state court also found no prejudicial incompetence of

3  counsel. *Id*. at 1561.

4      Petitioner has failed to demonstrate that the state court decision was unreasonable.  Petitioner

5  also fails to identify clearly established Supreme Court law establishing that *Doyle* compels the

6  suppression of statements made to a private party rather than in response to police questioning.

7  Furthermore, assuming that the prosecutor committed error under *Doyle*, Petitioner fails to establish

8  that the error had a substantial and injurious effect in determining the jury's verdict. *Brecht v.*

9  *Abrahamson*, 507 U.S. 619, 637 (1993).  As noted by the state court, Buchanan's account of the

10  murder, corroborated by physical evidence, credibly established Petitioner's identity as Smith's

11  murderer.  Finally, in light of the absence of an objectionable error, the state court's denial of

12  Petitioner's ineffective assistance claim was also reasonable.

13      For the above-mentioned reasons, Petitioner's claim lacks merit and is denied.

14  **B.     Claim Two**

15      Petitioner alleges that trial counsel provided ineffective assistance by failing to adequately

16  prepare defense witness Jeff Fischbach, an expert witness in cell phone technology.  Trial counsel

17  asked Fischbach to testify about cell phone records relied upon heavily by the prosecution, but

18  according to Petitioner, when Fischbach took the stand, he stated that he had never been to

19  Richmond and was not familiar with the specific facts of Petitioner's case.  Respondent counters that

20  Fischbach was called to testify to general principles of cell phone mechanics, rendering the fact that

21  he was unfamiliar with the facts of the case irrelevant.

22      Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*,

23  466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, the petitioner must

24  establish two factors.   First, he must establish that counsel's performance was deficient, i.e., that it

25  fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at

26  687–68, "not whether it deviated from best practices or most common custom," *Harrington v.*

27  *Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650).  "A court considering a

28

**5**

**United States District Court**
For the Northern District of California

1  claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was

2  within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting

3  *Strickland*, 466 U.S. at 689).  Second, he must establish that he was prejudiced by counsel's

4  deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

5  unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S.

6  at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

7  *Ibid.*  Where the defendant is challenging his conviction, the appropriate question is "whether there

8  is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

9  respecting guilt."  *Id.* at 695.  Overall, "the standard for judging counsel's representation is a most

10  deferential one."  *Richter*, 131 S. Ct. at 788.

11         Petitioner's ineffective assistance claim fails because he fails to identify any matters

12  regarding which Fischbach could have testified had he been prepared differently for trial.  He also

13  fails to establish that he was prejudiced by the absence of such testimony.  As noted *supra*, evidence

14  of Petitioner's guilt was formidable.  Petitioner's claim lacks merit and is denied.

15  **C.     Claim Three**

16         Petitioner alleges that the prosecution concealed their "deal" with Buchanan from the jury.

17  He alleges that Buchanan testified adversely to him at a preliminary hearing, and that after trial,

18  Buchanan was allowed to plead guilty to voluntary manslaughter and robbery, and was sentenced to

19  12 years in prison.  Petitioner alleges that these facts imply a deal, and its concealment violated

20  *Brady v. Maryland*, 373 U.S. 83 (1963).

21         Petitioner has failed to allege any facts establishing the existence of a deal between

22  Buchanan and the prosecution.  Conclusory allegations which are not supported by a statement of

23  specific facts do now warrant habeas relief.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

24  Accordingly, Petitioner's claim lacks merit and is denied.

25  **D.     Claim Four**

26         Petitioner alleges that the prosecutor improperly "vouched" for Buchanan, claiming that "the

27  prosecutor . . . spent a great deal of time vouching for the preliminary transcript of Buchanan urging

28

**6**

1   the jury to rely on it." Pet. at 5. Petitioner however, fails to cite to the record to support his claim

2   and fails to cite any controlling law. Petitioner fails to establish that he is entitled to relief on this

3   claim. Accordingly, Petitioner's claim is denied.

4   **E.      Claim Five**

5          Petitioner alleges that the prosecutor knowingly used perjured testimony when he allowed

6   the victim's mother to testify that she heard Buchanan say, "Korey, don't kill him." He asserts that

7   Buchanan testified at the preliminary hearing that he knew Petitioner by the nickname "Twin" or

8   "Twig." Presuming that Buchanan would have called Petitioner by his nickname had he addressed

9   him as alleged, Petitioner asserts that the victim's mother's testimony was false, and that the

10  prosecutor deliberately presented this false testimony to the jury. Pet. at 5.

11         A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and

12  must be set aside if there is any reasonable likelihood that the false testimony could have affected

13  the judgment of the jury. *United States v. Bagley*, 473 U.S. 667, 678 (1985). In order to establish

14  that a prosecutor presented false evidence, a petitioner must show that 1) the testimony or evidence

15  was actually false, 2) the prosecution knew or should have know that the testimony was false, and 3)

16  the false testimony was material. *Hayes v. Brown*, 399 F.3d 1130, 1135 (9th Cir. 2002), citing

17  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

18         Here, Petitioner fails to show that the prosecution knowingly used perjured testimony.

19  Petitioner fails to demonstrate that the victim's mother's testimony was false – he has not alleged,

20  for example, that he never called Petitioner by his first name. Nor has he established that the

21  prosecution knew or should have known that he did not call Petitioner by his first name. Petitioner

22  has failed to allege facts sufficient to establish the knowing use of perjured testimony. *See United*

23  *States v. Zuno-Arce*, 339 F.3d 886, 889-90 (9th Cir. 2003). Petitioner's claim lacks merit and is

24  denied.

25  **F.      Claim Six**

26         Petitioner alleges that the trial court violated his confrontation rights by admitting

27  Buchanan's preliminary hearing testimony at trial. Buchanan testified under a grant of use immunity

28

**United States District Court**
For the Northern District of California

**7**

1   at the preliminary hearing.  After he gave his testimony, the prosecution decided to charge him with

2   the robbery and murder of Smith.  Buchanan's use immunity was withdrawn and he asserted his

3   Fifth Amendment privilege not to testify.  At trial, the court found Buchanan to be unavailable and

4   admitted his preliminary hearing testimony.  Petitioner claims that this procedure denied him his

5   right to cross-examine Buchanan before the jury.

6            The state court denied this claim, finding that the admission of Buchanan's testimony

7   violated neither the California Evidence Code nor *Crawford v. Washington*, 541 U.S. 36 (2004).

8   *Hollinquest*, 190 Cal. App. 4th at 562-65.  Under *Crawford*, out-of-court statements that are

9   testimonial in nature must be excluded under the confrontation clause unless the declarant is

10  unavailable and the defendant had a prior opportunity to cross-examine the declarant.  *Id.* at 68.  The

11  state court found that as long as Petitioner was provided with the opportunity for cross-examination,

12  the admission of Buchanan's preliminary hearing testimony did not offend the confrontation clause

13  "simply because [Petitioner] did not conduct a particular form of cross-examination that in hindsight

14  might have been more effective." *Hollinquest*, 190 Cal. App. 4th at 563.  The court found that

15  defense counsel had thoroughly and effectively cross-examined Buchanan at the preliminary

16  hearing.  *Id.* at 563.

17           Petitioner fails to establish that the state court's decision constituted an unreasonable

18  application of *Crawford* or any other clearly established Supreme Court precedent, or that the state

19  court unreasonably determined the facts.  Petitioner's claim lacks merit and is denied.

20  **G.     Claim 7**

21           Petitioner alleges that the prosecutor committed misconduct by failing to grant Buchanan

22  immunity at trial.  He contends that the prosecutor's acts of granting immunity at the preliminary

23  hearing and subsequently withdrawing immunity constituted wrongdoing that deliberately procured

24  Buchanan's unavailability in order to prevent him from testifying at trial.

25           The state court denied this claim, finding that neither the prosecution nor the trial court was

26  obligated to confer immunity upon Buchanan at trial.  *Hollinquest*, 190 Cal. App. 4th at 1551-52.

27  The court noted that the federal due process test recognizes the "exclusive authority and absolute

28

**8**

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1  discretion vested in the prosecution to grant immunity to a witness, and intrudes upon that discretion

2  only where the prosecution violates the defendant's right to a fair trial by refusing to grant use

3  immunity to a witness whose testimony would have been relevant with the deliberate intention of

4  distorting the fact-finding process." *Id*. at 1552.  The court proceeded to find that nothing in the

5  record suggested that the prosecutor intentionally rendered Buchanan an unavailable witness at trial.

6  Rather, the record suggested that the prosecutor chose not to grant him immunity after his distinctly

7  incriminating testimony at the preliminary hearing.  "Once Buchanan's testimony at the preliminary

8  hearing firmly established his own guilt as well as that of defendant, the prosecutor may have

9  justifiably concluded that the witness was no longer a worthy candidate for a grant of immunity."

10  *Id*. at 1553.  The court concluded that the denial of immunity was an "appropriate tactical decision

11  and exercise of exercise discretion."  *Id*.

12      The state court decision denying Petitioner's claim was reasonable.  Petitioner fails to

13  demonstrate that the prosecution denied Buchanan immunity with "the deliberate intention of

14  distorting the fact-finding process."  *United States v. Straub*, 538 F.3d 1147, 1156 (9th Cir. 2008).

15  Petitioner's claim lacks merit and is denied.

16                              **CONCLUSION**

17      The state court's adjudication of Petitioner's claims did not result in a decision that was

18  contrary to, or involved an unreasonable application of, clearly established federal law, nor did it

19  result in a decision that was based on an unreasonable determination of the facts in light of the

20  evidence presented in state court proceedings.  Accordingly, the petition is **DENIED**.  The Clerk shall

21  enter judgment in favor of respondent and close the file.  Furthermore, a certificate of appealability

22  will not issue.  Reasonable jurists would not "find the district court's assessment of the

23  constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner

24  may seek a certificate of appealability from the Court of Appeals.

25      **IT IS SO ORDERED**.

26  DATED: May 2, 2013

27                              Jeffrey S. White
                               United States District Judge

28                                  **9**

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

KOREY HOLLINQUEST,

          Plaintiff,

  v.

G D LEWIS et al,

          Defendant.

_____/

Case Number: CV12-01347 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 2, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Korey Hollinquest G53752
P.O. Box 750
Susanville, CA 96127-0750

Dated: May 2, 2013

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California